UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILKER ALI C.O.,[1]<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br>Respondent. | No. 1:26-cv-08751-TLN-JDP<br>A# 245-629-371<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Wilker Ali C.O.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed an Answer. (ECF No. 6.) For the reasons set forth below, the Court GRANTS the petition. (ECF No. 1.) Respondent is directed to IMMEDIATELY RELEASE Petitioner.

///

///

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on December 21, 2023, without inspection or parole. (ECF No. 6-1 at 3.) U.S. Customs and Border Patrol briefly detained him then released him on his own recognizance and began removal proceedings against him through service of a Notice to Appear in immigration court in Kansas City. (*Id.*; ECF No. 1 at 13, 16.) Since entering the United States, Petitioner has had no criminal history. (ECF No. 6-1 at 3.)

U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner in Buffalo, New York on September 2, 2026. (ECF No. 1 at 1; 6-1 at 2.) On September 23, 2026, the Buffalo Immigration Court denied Petitioner bond under *Matter of Qi. Li*, 29 I&N Dec. 66 (BIA 2025). (ECF No. 6-3.) Alternatively, the immigration judge ("IJ") found Petitioner a flight risk. (*Id.*)

Petitioner was subsequently transferred to California City Detention Facility, where he remains detained. (ECF No. 1 at 1.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner argues that his detention violates the Fifth Amendment Due Process Clause.[2]

---

[2] Petitioner also argues that his detention violates the Fourth Amendment and his substantive due process rights. (ECF No. 1 at 5–6.) Finding relief warranted on Petitioner's

(ECF No. 1 at 4–5.) Respondent contends that Petitioner's claims are barred by prudential exhaustion and that he is lawfully detained pursuant to 8 U.S.C. § 1226(a). (ECF No. 6 at 1–2.)

A. Prudential Exhaustion

Respondent argues that Petitioner should be required to exhaust administrative remedies before pursuing habeas relief. (ECF No. 6 at 1–2.)

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). An administrative appellate record is not necessary to reach a proper decision on Petitioner's claim that his detention does not comport with due process, as the Court is in possession of all evidence necessary to resolve this claim, including a Digital Audio Recording ("DAR") of the proceedings. (ECF No. 8.) Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, there is no reason to delay for the possibility that the BIA corrects any mistakes in the IJ's decision. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error."). Additionally, because Petitioner is currently detained by the government, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Thus, the Court declines to require prudential exhaustion in this case.

///

---

procedural due process claim, the Court need not address these additional arguments.

B. Fifth Amendment Due Process Challenge to Bond Proceedings

Petitioner claims that the "procedures afforded before and after [his] re-detention were [not] constitutionally sufficient." (ECF No. 1 at 4–5.) Respondent argues that Petitioner's detention is lawful because he received an initial custody determination hearing pursuant to 8 U.S.C. § 1226(a) ("§ 1226(a)") and the IJ denied bond. (ECF No. 6 at 1.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As to the first step, the Court finds Petitioner has a clear liberty interest protected by the Fifth Amendment. Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

Additionally, the government's decision to release Petitioner and allow him to remain in the community for years created a powerful liberty interest. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

///

*ii. Process Provided*

As to the second step — the process owed to Petitioner — Respondent argues that Petitioner is detained pursuant to § 1226(a). (ECF No. 6 at 1.) Section 1226(a) provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Because Respondent agrees Petitioner is entitled to a bond hearing in accordance with § 1226(a), the Court proceeds to determine whether he received a constitutionally compliant bond hearing.

At a § 1226(a) bond hearing, an IJ must determine whether a noncitizen is a danger to the community or a flight risk. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Otherwise, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez*, 124 F.4th at 784–85. However, "due process claims and questions of law raised in immigration proceedings" are reviewed de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202–03 (9th Cir. 2011). Under an abuse of discretion standard, the Court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 783–84. (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

At Petitioner's September 23, 2026, bond hearing, the Department of Homeland Security

("DHS") did not make any argument regarding whether Petitioner was a danger, asserting instead that he was a flight risk. (ECF No. 8.)[3] After a brief discussion with Petitioner's counsel regarding Petitioner's place of residence, the IJ ruled as follows:

> I'm going to find that he's a flight risk, I find the requirement under the regulations to update the court of your address of record to be a critical issue. As a primary issue -- a primary point, I'm going to deny the motion for bond based on [*Matter of*] *Q. Li* 29 I&N Dec. 66 (BIA 2025). Secondarily, I'm going to find that he's a flight risk. We have that he had a pending matter before the Kansas City court but he has a driver's license in Pennsylvania and then we have him encountered as you said living for a period of time in New York. I have tried to be understanding that the state of Pennsylvania and New York are very large but those [inaudible] — those locations are not livable — it's not a commutable distance from my understanding. Furthermore, the court finds he has limited equities given the passage of time. Furthermore, in light of current case law as recently as – *Matter of A-E-V-M*, 30 I. & N. Dec. 20 (BIA 2026) even if I take what [Petitioner] states in his asylum application he doesn't have an approval under *Matter of ATTV*[4] approvable application for asylum. Therefore, his relief is highly speculative and makes him even more so a flight risk. Limited family ties, no fixed, firm address, and as stated this is an alternative to the *Q. Li* analysis.

(*Id.*)

As an initial matter, the BIA's decision in *Matter of Q. Li* finding that noncitizens arrested in the interior of the United States are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) is incorrect under binding Ninth Circuit precedent. 29 I. & N. Dec. 66, 71. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026) the Ninth Circuit held that the mandatory detention scheme of 8 U.S.C. § 1225(b)(2) applies only to noncitizens entering the United States at the border. In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under 8 U.S.C. § 1226(a). *Id.* Indeed, Respondent concedes that Petitioner is subject to

---

[3] Respondent lodged a DAR of the bond hearing. (ECF No. 8.) The sound quality on the recording is poor, and there is nothing audible for approximately three minutes from 1:00–3:55. (*Id.*) It is not clear whether the audio is missing, or whether there was no discussion on the record at this point. The Court presumes that if anything of significance transpired during this period, Respondent would have brought it to the Court's attention.

[4] Because of the poor sound quality and the IJ's failure to provide a full citation, it is not clear which BIA decision the IJ was referring to. For the reasons stated below, this omission is immaterial.

§ 1226(a). (ECF No. 6 at 1.)

In the alternative, the IJ found Petitioner had not satisfied his burden to demonstrate that he was not a flight risk. The Court finds that there was insufficient evidence as a matter of law for the IJ to make this finding.

In making a bond determination, an immigration court considers the following factors:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

The IJ's ruling makes no mention at all of Petitioner's length of residence in the United States, employment history, record of appearance in court, or lack of criminal activity and attempts to flee from authorities. Of the two factors the IJ did mention — family ties[5] and fixed address — she did so in a single sentence, with no elaboration or explanation of how she came to her determination. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.") (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned

[5] The IJ's statement that "[Petitioner] has limited equities given the passage of time" is not clear. (ECF No. 8.) The Court assumes the IJ was referencing community or family ties. In any event, the IJ's finding is conclusory and without explanation.

consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ their] reasoning”)).

The IJ relied on only two other findings to support her determination of flight risk: (1) Petitioner’s address because he had a Pennsylvania driver’s license but was encountered in New York and he failed to update his address with the immigration court; and (2) Petitioner’s eligibility for only “highly speculative [immigration] relief.” (ECF No. 8.) The IJ’s reliance on Petitioner’s alleged failure to update his address with the Kansas City immigration court as a “critical issue” was error. Failure to appear at an immigration hearing would be a relevant fact under *Guerra* factor five, but simply failing to update an address with the immigration court is not probative of flight risk. *See Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (finding abuse of discretion where “the IJ ‘relied upon proof that—as a matter of law—could not establish’ that Petitioner was a flight risk” (quoting *Kharis v. Sessions,* No. 18-CV-04800-JST, 2018 WL 5809432, at *5 (N.D. Cal. Nov. 6, 2018)). Similarly, it is unclear what the IJ meant by the statement that Pennsylvania and New York were “not a commutable distance from my understanding,” but the Court notes that Pennsylvania and New York share a border. (ECF No. 8.)

Finally, the IJ improperly relied on the “speculative nature” of Petitioner’s potential for immigration relief. *See Nazari v. Mullin*, No. 2:26-CV-01904-GJL, 2026 WL 2879665, at *8 (W.D. Wash. Sept. 18, 2026) (“The BIA . . . and several district courts have rejected the perceived weakness of a noncitizen’s available forms of relief from removal as a rational basis for a flight risk finding.”); *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654-LK, 2026 WL 1623154, at *8 (W.D. Wash. June 5, 2026) (citing *Singh*, 638 F.3d at 1205) (“[A] removal order alone cannot establish that a noncitizen is a flight risk, even where relief from removal is unlikely.”).

The IJ’s primary ruling was unlawful under Ninth Circuit precedent. Her alternative finding is unsupported by the evidence considered as a matter of law. The Court therefore finds that Petitioner did not receive a constitutionally adequate bond hearing and was deprived of his right to due process.

///

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner Wilker Ali C.O. (A# 245-629-371) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondent is ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondent shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

2. The Motion for Temporary Restraining Order is DENIED as moot. (ECF No. 2.)

3. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order.**

4. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 19, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE